**BRODSKY & SMITH, LLC**
Evan J. Smith (SBN 242352)
esmith@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Beverly Hills, CA 90212
Tel.: (877) 534-2590
Fax: (310) 247-0160

*Attorneys for Plaintiff*

[Additional Counsel Listed Below]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS C. GROCE III, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IXYS CORPORATION, NATHAN ZOMMER, UZI SASSON, DONALD L. FEUCHT, SAMUEL KORY, S. JOON LEE, TIMOTHY A. RICHARDSON, JAMES M. THORBURN, KENNETH D. WONG, IRON MERGER CO., INC. and LITTELFUSE, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Douglas C. Groce III ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### SUMMARY OF THE ACTION

1.       Plaintiff brings this class action on behalf of the public stockholders of IXYS

Corporation ("IXYS" or the "Company") against IXYS's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Littelfuse, Inc. through its wholly owned subsidiary Iron Merger Co., Inc. ("Merger Sub" and collectively with Littelfuse, Inc. "Littelfuse").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "Registration Statement") to be filed with the Securities and Exchange Commission ("SEC") on October 26, 2017. The Registration Statement recommends that IXYS shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby IXYS is acquired by Littelfuse. The Proposed Transaction was first disclosed on August 28, 2017, when IXYS and Littelfuse announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Littelfuse will acquire all of the outstanding shares of common stock of IXYS for $23.00 per share in cash or 0.1265 shares of Littelfuse common stock per share of IXYS (the "Merger Consideration"). In total, half the Merger Consideration will be offered as cash and half as stock. The deal has an equity value of approximately $750 million and is expected to close in the first quarter of 2018.

3.      IXYS was founded by Nathan Zommer, who has been at the helm of the Company since 1993. Zommer also beneficially owns more than 20% of the Company's stock. The Board allowed Zommer, who is in a position of power and control, to lead the process that led to the sale of the Company. At the same time, the Board skewed the process to benefit Littelfuse, running a cursory review of parties potentially interested in acquiring IXYS before entering into an exclusivity agreement with Littelfuse.

4.      The skewed process led to an inadequate Merger Consideration. The Company's

CLASS ACTION COMPLAINT

steady growth belies the cyclical nature of the semiconductor industry, and Littelfuse will see cost savings of up to $30 million in the first two years after the Proposed Transaction closes. In addition, the Board failed to negotiate a collar to protect the value of the stock-based consideration.

5.    Furthermore, the Registration Statement is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by IXYS management, as well as the financial analyses conducted by Needham & Company, LLC ("Needham"), IXYS's financial advisor.

6.    For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amended registration statements with the SEC or otherwise causing any amended registration statements to be disseminated to IXYS's shareholders, unless and until the material information discussed below is included in the amended registration statement or otherwise disseminated to IXYS's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

7.    Plaintiff is, and has been at all relevant times, the owner of shares of common stock of IXYS.

8.    Defendant IXYS is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 1590 Buckeye Drive, Milpitas, California 95035. IXYS common stock trades on NASDAQ under the ticker symbol "IXYS." IXYS is a Silicon Valley power semi-conductor company that develops products to

CLASS ACTION COMPLAINT

improve power conversion efficiency.

9.    Defendant Nathan Zommer is the founder of IXYS, a Chief Executive Officer ("CEO") of the Company and Chairman of the board of directors. Zommer has been a director of the Company since 1983, and has served as Chairman and CEO since March 1993.

10.    Defendant Uzi Sasson has been a CEO since August 2016 and a director of the Company since 2015. Sasson has been President of IXYS since 2009, and has served as Chief Financial Officer and Secretary since 2004. From 2004 to 2009 Sasson was Vice President and from 2007 to 2010 was Chief Operating Officer. Sasson also held a seat on the board of directors between August and November 2004.

11.    Defendant Donald L. Feucht has been a director of the Company since 2000.

12.    Defendant Samuel Kory has been a director of the Company since 1999.

13.    Defendant S. Joon Lee has been a director of the Company since 2000.

14.    Defendant Timothy A. Richardson has been a director of the Company since 2007.

15.    Defendant James M. Thorburn has been a director of the Company since 2007.

16.    Defendant Kenneth D. Wong has been a director of the Company since 2011.

17.    Defendants Zommer, Sasson, Feucht, Kory, Lee, Richardson, Thorburn and Wong are collectively referred to herein as the "Board."

18.    Defendant Littelfuse, Inc. is a corporation organized and existing under the laws of the State of Delaware. Littelfuse, Inc. maintains its principal executive offices at 8755 W. Higgins Road, Suite 500, Chicago, Illinois 60631. Littelfuse, Inc. is a multinational company that primarily produces circuit protection products, but also manufactures a variety of electronic switches and automotive sensors.

19.    Defendant Merger Sub is a corporation organized and existing under the laws of the State of Delaware and is a wholly owned subsidiary of Littelfuse, Inc.

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) IXYS maintains its primary place of business in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**CLASS ACTION ALLEGATIONS**

23.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of IXYS common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

24.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable.  As of August 25, 2017, IXYS had approximately 32.6 million shares outstanding.

b.    Questions of law and fact are common to the Class, including, inter alia, the following:

i)    Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

iii)    Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amended registration statement with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

iv)    Whether the Individual Defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives, including offers from interested parties for the Company or its assets;

v)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

vi)    Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

c.    Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

d.    Plaintiff's claims are typical of those of the other members of the Class.

CLASS ACTION COMPLAINT

e.      Plaintiff has no interests that are adverse to the Class.

f.      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

g.      Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

h.      Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

25.    IXYS was founded in 1983 by Defendant Zommer. The Company was reincorporated in Delaware in 1995, and in September 1998, IXYS became a publicly traded company when it merged with Paradigm Technology, Inc. in a reverse merger.

26.    From its inception in 1983, IXYS has focused on energy efficiency and high power and voltage semiconductors. When the Company merged with Paradigm Technology, Inc., it designed and developed semiconductors used to control energy, focusing on medium to high power semiconductors. IXYS also sold static random access memory products. While the Company still develops high power semiconductors, IXYS also develops advanced mixed-signal integrated circuits, application specific integrated circuits and radio frequency power semiconductors.

CLASS ACTION COMPLAINT

**B.** **The Proposed Transaction is Unfair to Stockholders**

27.     Despite the potential for IXYS to grow and succeed, the Board agreed to sell the Company to Littelfuse for an unfair price and through an unfair process. The Proposed Transaction fails to adequately compensate stockholders for the Company's value. In addition, the sale process favored Littelfuse and was led by Defendant Zommer, who held a position of power and control at the Company.

Unfair price

28.     The semiconductor industry is cyclical: like a roller coaster, the industry faces constant ups and downs.[1] Despite this, IXYS fared well, showing continued and stable growth. Over the year ending August 25, 2017, IXYS stock had increased 38%, and had reached as high as $17.60 in July 2017:



29.     In a press release issued on July 28, 2016, the Company announced financial results for its fiscal quarter ending June 30, 2016. The Company reported net revenues of $80.6 million,

---

[1] "The Industry Handbook: The Semiconductor Industry," Investopedia.com, available at http://www.investopedia.com/features/industryhandbook/semiconductor.asp.

an increase of $866,000 from the previous quarter but a decrease of $1.4 million from the quarter ending June 30, 2015. The Company also reported net income of $3.0 million, the same as the quarter ending June 20, 2015. "We are pleased that IXYS has achieved strong revenues, despite general industry softness," Defendant Zommer stated in the press release. In the same press release, Defendant Sasson stated: "[w]e are optimistic about our growth prospects as IXYS' financial metrics, including bookings and backlog, look promising. However, we must consider ongoing volatile macroeconomic conditions and the cyclical slowdown in the summer months."

30.    The next quarter saw similarly mixed results. In a press release issued on November 2, 2016, the Company announced net revenues of $78.6 million for the quarter ended September 30, 2016, compared to $80.3 million for the quarter ended September 30, 2015. The Company also reported net income of $3.9 million for the quarter ended September 30, 2016, a 20% increase from the quarter ended September 30, 2015. "We have confidence that our strategic growth initiatives, in combination with our operational efficiencies, will lead to further success in the months ahead," Defendant Sasson was quoted in the press release.

31.    Defendant Sasson's optimism was well founded. On February 2, 2017, the Company issued a press release announcing financial results for the quarter ending December 31, 2016. The Company reported net revenues of $79.5 million, an increase of 5.8% compared to the quarter ending December 31, 2015, and net income was $5.1 million, an increase of 123.1% compared to the quarter ending December 31, 2015. Defendant Zommer was quoted in the press release as stating: "Higher revenues, in combination with aggressive cost-cutting initiatives and the focus on optimizing our worldwide enterprise, have allowed IXYS to improve its results. We continued our investments in new products and technologies in order to support our growth." Defendant Sasson was quoted in the press release as stating: "Bookings are up and our backlog remains strong."

32.    The Company's financial results for the quarter and year ending March 31, 2017 continued the trend. In a press release issued on June 2, 2017, the Company reported net revenues of $83.4 million for the quarter, an increase of 4.5% from the quarter ending March 31, 2016. The Company also reported net income of $9.3 million for the quarter, an increase of 50% from the quarter ending March 31, 2016. For the year, the Company reported net revenues of $322.1 million compared to $317.2 million for the year ending March 31, 2016. Net income for the year was $21.3 million, an increase of 44.8% from the year ending March 31, 2016. "Efforts to increase gross margins are bearing fruit as evidenced by three consecutive quarters of growth in margins. Higher net revenues reflect strengthening demand for our products. In particular, our power product sales have been boosted by demand in the industrial market. Our backlog looks healthy for the coming quarters," Defendant Sasson is quoted in the press release.

33.    Approximately three weeks before entering into the Merger Agreement, the Company reported financial results for the quarter ending June 30, 2017. In a press release issued on August 2, 2017, the Company reported net revenues of $83.4 million for the quarter, an increase of 3.6% from the quarter ending June 30, 2016. The Company reported net income of $5.5 million, an increase of 82% from the quarter ending June 30, 2016. And the backlog was $114.0 million, which was the highest the backlog had been since March 2012. "Atypical of our summer seasonal slowdown, customer demand remains robust. We are seeing healthy sales throughout the industrial, commercial and communication infrastructure markets worldwide," Defendant Sasson was quoted as stating in the press release.

34.    Although the Company has experienced strong growth in an otherwise cyclical industry, many IXYS shareholders will not be able benefit from the continued success of the Company. Instead, any benefits will accrue mostly to Littelfuse. For example, the press release announcing the Proposed Transaction, issued on August 28, 2017, stated that the Proposed

CLASS ACTION COMPLAINT

Transaction "is expected to be immediately accretive to Littelfuse's adjusted earnings per share and free cash flow in the first full year post transaction close[.]"

35.     A presentation prepared by Littelfuse and filed with the SEC on August 28, 2017 noted that Littelfuse expected to see more than $30 million of annualized cost savings within the first two years after the Proposed Transaction closed:



36.     Littelfuse also sees the Proposed Transaction as providing opportunities to enter new markets, strengthen Littelfuse's position in markets in which it already operates, and optimize its operations:

CLASS ACTION COMPLAINT



### Strategic Rationale
#### Clear Alignment to Five-Year Littelfuse Strategy






**Expanded Footprint in Strategic Markets**

- Significant expansion into **industrial and electronics OEM markets**
- Increased long-term penetration of power control products into **automotive markets**
- Strengthened position in **Asia** resulting from combined operations and salesforce

**Technology and Product Expansion**

- Adds significant engineering expertise and IP around **power semiconductor technologies**
- Capture **design-in opportunities** in high voltage industrial and automotive applications
- Complements existing investment in **silicon carbide**

**Complementary Customers and Channels**

- IXYS' **industrial OEM relationships** via direct sales team provide market insight
- Increased content per vehicle through cross-selling of power control products in **automotive**
- Significant overlap in major **global electronics distribution partnerships** bolsters position in channel

**Accelerates High Growth Opportunities**

- Provides opportunities to capture **high growth end markets**, such as:
- Renewable energy
- Industrial power supplies
- Electric vehicle charging infrastructure
- Industrial motor drives

**Combined Critical Scale**

- **Economies of scale** to leverage technology and other investments
- **Optimization of customer facing and operational structures,** leveraging respective strengths



Littelfuse, Inc. © 2017    7

37.     Given the prospective gain to Littelfuse, and the Company's growth prospects, the Merger Consideration fails to adequately compensate IXYS stockholders.

<u>Unfair process</u>

38.     The Proposed Transaction not only provides the stockholders with an unfair price, it is also the product of an unfair sales process.

39.     Defendant Zommer has been in a position of power at IXYS since 1983. From 1998 through 2017, Defendant Zommer beneficially owned at least 22% of outstanding IXYS common stock, and was CEO as well as Chairman of the Board. Defendant Zommer consolidated his power as the number of executive officers shrunk from four in 2002 to two in 2010. As one of only two executive officers, the founder, the CEO, the Chairman of the Board and one of the largest (and at times the largest) holder of IXYS stock, Defendant Zommer wieldced significant control over the Board and the Company.

40.     Defendant Zommer's power and control are evident throughout the process that led to the Proposed Transaction. Defendant Zommer and Defendant Sasson met with the CEOs of Littelfuse and Company A multiple times. Defendant Zommer, along with Defendant Sasson and

CLASS ACTION COMPLAINT

the IXYS general counsel met with representatives of Needham to discuss contacting third parties concerning their interest in acquiring IXYS. Yet at no time did the Board discuss authorizing an independent committee of the Board to oversee negotiations. This is especially troubling given that Littelfuse intends to name Defendant Zommer to the Littelfuse board of directors after the Proposed Transaction closes. The Registration Statement is silent as to whether and when Littelfuse and Defendant Zommer discussed his addition to the Littelfuse board of directors.

41.     The process also favored a sale to Littelfuse. The first indication of interest by Littelfuse concerning a potential strategic combination was on February 21, 2017. According to the Registration Statement, Littelfuse did not provide any details about a potential proposal until more than two months later, on May 5, 2017. Even then, an official proposal was not made until June 28, 2017. At that time, the Board knew of only two companies interested in a transaction with IXYS: Company A and Littelfuse. Company A had not yet provided any details about a proposal. Yet the Board decided just one month later to enter into an exclusivity agreement with Littelfuse.

42.     The Board's swift action is troubling given that only 31 days passed between authorizing Needham to contact third parties about a potential acquisition and entering into the exclusivity agreement with Littelfuse. It appears that 11 parties were contacted after June 28, 2017, of which only one expressed interest. The Board did not discuss contacting more parties, or focusing more on strategic partners or financial sponsors, or even different types of transactions beyond an acquisition of the Company. Instead, when Company A and Littelfuse were the sole companies to present proposals to the Board—just one month after they began assessing interest in a potential acquisition of the Company—the Board decided to sell the Company to Littelfuse.

43.     Finally, the Board failed to negotiate for a collar device to protect those stockholders who receive the Merger consideration in the form of Littelfuse stock. Without a collar, those stockholders face the risk that Littelfuse's stock price decreases, decreasing the value

of the Merger Consideration. At the time the Registration Statement was filed, the implied value of the stock part of the Merger Consideration was $22.55, less than the cash part of $23.00.

**C.    The Preclusive Deal Protection Devices**

44.    As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

45.    By way of example, section 5.4(a) of the Merger Agreement includes a "No Solicitation" provision barring the Company from soliciting or encouraging inquiries or proposals that could lead to an acquisition proposal. Section 5.4(a) also demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal. Further, this provision fails to provide a "go-shop" period that would allow the Board to rightfully seek out a better offer for the company.

46.    Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Littelfuse. For example, pursuant to section 5.4(d) of the Merger Agreement, the Company must notify Littelfuse of any offer made by an unsolicited bidder.  Thereafter, should the Board determine that the unsolicited offer is superior, section 5.4(e) requires that the Board grant Littelfuse four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  Littelfuse is able to match the unsolicited offer because, pursuant to section 5.4(e) of the Merger Agreement, the Company must provide Littelfuse with the identity of the party making the proposal and copies of any agreements and financing agreements related to the acquisition proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

47.    In other words, the Merger Agreement gives Littelfuse access to any rival bidder's information and allows Littelfuse a free right to top any superior offer.  Accordingly, no rival

bidder is likely to emerge and act as a stalking horse for IXYS, because the Merger Agreement unfairly assures that any "auction" will favor Littelfuse and allow Littelfuse to piggy-back upon the due diligence of the foreclosed second bidder.

48.     In addition, pursuant to section 7.3(c) of the Merger Agreement, IXYS must pay Littelfuse a termination fee of $28.5 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

49.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Littelfuse's inadequate offer price.

**D.     The Materially Incomplete and Misleading Registration Statement**

50.     The Individual Defendants owe the stockholders a duty of candor. They must disclose all material information regarding the Proposed Transaction to IXYS stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

51.     On October 26, 2017, Defendants filed the Registration Statement with the SEC. The purpose of the Registration Statement is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether or not to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, IXYS shareholders cannot

make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning Needham's Financial Analyses***

52.     First, with respect to the *IXYS Selected Companies Analysis*, the Registration Statement fails to disclose the objective selection criteria and observed metrics and multiples for each company for enterprise value to LTM revenues, enterprise value to projected calendar year 2017 revenues, enterprise value to projected calendar year 2018 revenues, enterprise value to LTM adjusted EBITDA, enterprise value to projected calendar year 2017 adjusted EBITDA, enterprise value to projected calendar year 2018 adjusted EBITDA, price to LTM non-GAAP EPS, price to projected calendar year 2017 non-GAAP EPS, and price to projected calendar year 2018 non-GAAP EPS.  The Registration Statement also fails to disclose whether Needham performed any type of benchmarking analysis for IXYS in relation to the selected public companies.

53.     Second, with respect to the *Selected Precedent Transaction Analysis,* the Registration Statement fails to disclose the objective selection criteria and observed metrics and multiples for each company for enterprise value to LTM revenues, enterprise value as a multiple of next twelve months revenues, enterprise value to LTM adjusted EBITDA, and enterprise value as a multiple of next twelve months adjusted EBITDA.  The Registration Statement also fails to disclose whether Needham performed any type of benchmarking analysis for IXYS in relation to the selected public companies.

54.     With respect to the *Discounted Cash Flow Analysis,* the Registration Statement fails to disclose the individual inputs and assumptions utilized by Needham to derive the discount rate range of 11.5% to 13.5% The Registration Statement also fails to disclose the implied perpetuity growth rate range that results from the analysis.

55.     With respect to the *Present Value of Illustrative Future Stock Prices Analysis,* the Registration Statement fails to disclose the individual inputs and assumptions utilized by Needham to derive the discount rate range of 13.1% to 15.1% The Registration Statement also fails to disclose the projected cash and debt for 2018 through 2020.

56.     Finally, with respect to the *Littelfuse Selected Companies Analysis*, the Registration Statement fails to disclose the objective selection criteria and observed metrics and multiples for each company for enterprise value to LTM revenues, enterprise value to projected calendar year 2017 revenues, enterprise value to projected calendar year 2018 revenues, enterprise value to LTM adjusted EBITDA, enterprise value to projected calendar year 2017 adjusted EBITDA, enterprise value to projected calendar year 2018 adjusted EBITDA, price to LTM non-GAAP EPS, price to projected calendar year 2017 non-GAAP EPS, and price to projected calendar year 2018 non-GAAP EPS.  The Registration Statement also fails to disclose whether Needham performed any type of benchmarking analysis for Littelfuse in relation to the selected public companies.

### Materially Incomplete and Misleading Disclosures Concerning the Flawed Process

57.     The Registration Statement also fails to disclose material information concerning the sales process. For example, the Registration Statement does not provide any information concerning whether Defendant Zommer discussed his future on the Littelfuse board of directors before the Merger Agreement was signed and, if so, the timing and nature of those discussions.

58.     The Registration Statement also fails to disclose the members of IXYS management who were present at meetings of the Board on June 15, 2017, June 28, 2017, as well as in discussions with Company A and Littelfuse on July 24, 2017. In addition, the Registration Statement fails to disclose the members of IXYS management present for discussions on August 4, 2017 and August 9, 2017 between Littelfuse and IXYS and their respective financial advisors. Finally, the Registration Statement does not disclose the members of IXYS management who

contacted parties between June 28, 2017 and July 29, 2017 to gauge their interest in an acquisition of the company.

59.    In addition, the Registration Statement fails to disclose the number of financial sponsors and strategic partners contacted by the Company or Needham between June 28, 2017 and July 29, 2017.

60.    The Registration Statement also fails to disclose the basis for Company A's decreased proposal on July 26, 2017.

61.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, IXYS stockholders are unable to make a fully informed decision in connection with the Proposed Acquisition and face irreparable harm, warranting the injunctive relief sought herein.

62.    In addition, the Individual Defendants knew or recklessly disregarded that the Registration Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

63.    Specifically, the Individual Defendants undoubtedly reviewed the contents of the Registration Statement before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Registration Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

64.    Further, the Registration Statement indicates that on August 25, 2017, Needham reviewed with the Board its financial analysis of the Merger Consideration and on August 25, 2017 delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion dated

August 25, 2017, to the effect that the Merger Consideration was fair, from a financial point of view, to IXYS shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Needham's financial analyses which has been omitted from the Registration Statement, and thus knew or should have known that such information has been omitted.

65.    Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

### **FIRST CAUSE OF ACTION**

### **On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

66.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67.    Defendants have filed the Registration Statement with the SEC with the intention of soliciting IXYS shareholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide the material information referenced above.

68.    In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of IXYS, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

69.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which,

at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

70.    Specifically, and as detailed above, the Registration Statement violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) the value of IXYS shares and the financial analyses performed by Needham in support of its fairness opinion and (ii) the process leading to the sale of the Company.

71.    Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Registration Statement is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Needham reviewed and discussed its financial analyses with the Board during the meeting on August 25, 2017 and further states that the Board relied upon Needham's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

72.    The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

73.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

74.     The Individual Defendants acted as controlling persons of IXYS within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of IXYS and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

75.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to the time the Registration Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

76.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Registration Statement.

77.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

78.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

79.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

80.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representatives and his counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amended registration statement with the SEC or otherwise disseminating an amended registration statement to IXYS shareholders unless and until Defendants agree to include the material information

CLASS ACTION COMPLAINT

identified above in the amended registration;

C.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

D.    In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.    Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.    Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

Dated:  November 8, 2017                     BRODSKY & SMITH, LLC


                                             By: /s/ Evan J. Smith
                                             EVAN J. SMITH (S.B. # 242352)
                                             9595 Wilshire Boulevard, Suite 900
                                             Beverly Hills, CA 90212
                                             Tel: (877) 834-2590


                                             **ROWLEY LAW PLLC**
                                             Shane T. Rowley
                                             Danielle Rowland Lindahl
                                             50 Main Street, Suite 1000
                                             White Plains, NY 10606
                                             Tel: (914) 400-1920
                                             Fax: (914) 301-3514

                                             *Attorneys for Plaintiff*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28